v. Wright v. Watts. Arguing for the appellate, Mr. Tim Johnson. Arguing for the state, Mr. Richard Cumberland. Ms. Jassa, you may proceed. Thank you. Good afternoon, Your Honors. Good afternoon. Ronnie Watts was convicted of committing in 2005 aggravated criminal sexual abuse and predatory criminal sexual assault after a jury trial in 2009. The complainant was Cheyenne. She was 10 years old at the time of the trial. She testified that during overnight visits with her great aunt and her husband, the defendant, he made sexual contact with her, starting when she was in kindergarten and continuing until she was in third grade. But Cheyenne could not remember many of the details of her visits. So in addition to Cheyenne, the state presented evidence of other crimes, which included the testimony of Samantha and Eucondra, with whom, according to the state, Mr. Watts had also had improper sexual conduct. In addition, they presented the testimony of a social worker, Mary McDermott, who explained the testimony of Eucondra and Samantha to the jury and really had no application whatsoever to Cheyenne. We raised two issues in our opening brief. I plan to focus my remarks on the first argument today because of the Illinois Supreme Court's recent decision in People v. DABS that evidence of other crimes to show propensity to commit a type of a crime does not violate the Illinois constitutional requirement of due process. As I noted in my brief, this is contrary to the decision of the Supreme Court of Iowa, where the Iowa propensity statute violated the constitution of that state and the related case law. If there are no questions about that, I'm going to move on to the other issue, which is the trial court's abuse of discretion in admitting the state's other crimes evidence. Under the circumstances of this case, it may have led the jury to believe that he was a bad person deserving of punishment, but not because he committed this crime against Cheyenne. Eucondra, who was 30, said that the defendant married her mother and had engaged in sexual contact with her about 10 years earlier. Samantha, who was 19 at the time of trial, said that the defendant was a family friend who babysat her and her brother on a single occasion about 11 years earlier. And while her brother was in the other room, he engaged in sexual conduct with her in his bedroom. A third witness, as I said, was Catherine McDermott, who testified about child sexual abuse accommodation syndrome. And she basically was explaining why it took as long as Eucondra and Samantha took to bring their complaints forward. I found that our issue concerning the improper admissions of other crimes evidence was complicated in this case by the confusion about the purpose for its admission. As we discussed in our opening brief, in the trial court, the state originally claimed the evidence of the other crimes against Eucondra and Samantha was admissible to show intent, motive, lack of mistake, and propensity. In the state's brief, it provides that the state told the jury that it should consider the other crimes evidence only for the purposes of intent or absence of mistake. In its brief, however, the state abandoned the claim that the evidence was presented for intent or absence of mistake. In its brief before this court, the state argues that the evidence was only properly admitted for the purpose of showing the defendant's propensity to commit sex crimes. There are several problems with this position. Well, typically you aren't allowed to show propensity with respect to any offense, but the statute under 115.7.3 allows one to show propensity, correct? Correct. So if they were saying we were trying to use it to show motive, modus operandi, or whatever purpose, that is allowed? It is allowed, except in cases where the defendant's intent is not at issue. Here the defendant completely denied improper touching of any sort with Cheyenne. And this court held in Cardamon, or Cardamone? Cardamon. Cardamon, that since it wasn't an issue, it was an improper basis to admit evidence of other crimes. Well, there certainly is a dispute as to whether or not he was admitting or not admitting to this offense. Because he didn't testify, he didn't admit. Well, the statement came in, correct? His statement came in that he said, do you want me to say something? I'll say something. Well, isn't that up to the trier of fact to make a determination as to whether or not it's an admission? It is, but the issue before the trier of fact was whether he did it or not. And he did not present, he didn't actually present any case except for the Cheyenne's videotaped recording. Is it your position that assuming the statute which has been found constitutional by our third and fourth districts, is it your position it would have been proper to have the jury instructed that the other crimes evidence was admissible for propensity? Under the statute, other crimes evidence obviously is permissible. But in this case it wasn't properly admitted because in this case the evidence was so stale that it shouldn't, the court just accepted it because other courts have, I mean that's what it appears based on the limited amount of information we have in the record, that there have been 20 year old admissions before. Aren't there other existing case law where the testimony goes back 10, 15, 20 years? Are you saying there are cases? Yes, of course there are. But that certainly doesn't mean that there aren't cases where that evidence was barred. Oftentimes evidence that's 10 years old is considered far too stale to be admitted. And in this case there was nothing terribly similar about the facts and circumstances here. Well the statute doesn't require identical. Absolutely not, no. But sufficient similarity and in this case the court conducted a balancing test, correct? The court said that it did conduct a balancing test and that it reviewed the Donahoe case. But I don't think that the judge properly considered the evidence. He just sort of accepted the state's position on this because the whole trial, it was never clear what the jury was supposed to do with this evidence. They had this, I mean I haven't been on the jury, but the jury was instructed what to do with this evidence. The state argued what it was supposed to do with this evidence and now the state is saying it should have done something else with this evidence. What's our burden here? My burden is showing that the trial court abused its discretion, that no reasonable person would have handled things this way, would have proceeded in this manner. And I think that in this case the jury instructions were completely, I think old jury instructions were used and they tried to modify them because I don't think that there is currently an IPI for propensity to commit other crimes because as you said it's always been barred. Did the defense object to the jury instructions that were presented? The defense counsel, as I recall, objected to the giving of a limiting instruction but the state presented a limiting instruction anyway which the court gave. And that was the limiting instruction that said it's only for intent in absence of mistake, as I recall. So it didn't instruct the jury what they were supposed to do with it. And a properly instructed jury, as I wrote in my brief, is the cornerstone of our system. Is what the state is, in your words, asking for now propensity, is that not broader than what they were asking for at the trial level? In a sense it's broader but it's also specific as to that he has the propensity to commit this type of crime. Well then it doesn't have anything to do with his state of mind. It just says that he does it. It doesn't have anything to do with intent or motive or the absence of mistake. So your position is you can't ask the jury to consider the evidence for more than one thing? Of course you can. They didn't. They didn't? They didn't ask the jury to consider it on the basis of propensity to commit other similar crimes. But they asked him for motive, sovereignty, and mistake. Actually only two issues, intent and absence of mistake, is what the state wrote in its appellate court brief. So those were the two issues that the state admits that it was only seeking it for. And yet it didn't, it's way into that entire argument in its brief. It never really gets into anything except the propensity to commit other crimes evidence. During closing argument didn't the defense counsel argue that the two minors' testimony was not credible and in rebuttal the state referenced the girl's testimony and said that it should be considered and analyzed with respect to intent or lack of mistake? There's no objection to that? I don't remember the state's closing argument as well as you appear to, Your Honor, but I'm sure you're right. And I don't think that there was an objection because I think at that point it was very clear that the court was just going to let... The child counsel, Mr. Lee, did not object to the improper instruction, but he did object to the whole admission of this type of evidence. He said that this was totally improper. He argued against each of the two witnesses who testified about the things that happened so far back in the past. And I think by the time things happened like Ms. McDermott's testimony, it had become clear that the court was just going to allow all of this evidence to come in, even though it was far too much evidence. It should have been narrowly tailored to the purpose for which it was being admitted. And because we don't have any idea why it was admitted in this case, how could the state narrowly tailor it? And they didn't. It wasn't tailored at all. Well, the purpose of the statute in the first place was to protect child victims, to protect... I understood that the purpose was to ensure that criminals were punished, to make it easier to... And protect... Which will... And protect the public. And if you read Huddleston, which was a year after... I'm sorry, if I read what? Huddleston, the United States, or the Illinois Supreme Court, in 2004, talked about the purpose of this statute, as well as other statutes that were enacted because of proclivity or propensity of individuals to recommit these types of offenses. And this statute allows that evidence to come in to show not just intent or motive, but also propensity. And in this case, the state got a less damaging instruction than they were entitled to. I think that less damaging is sort of in the eye of the beholder, that they were allowed to argue that he intended to do this. They don't have any evidence that he intended to do this. They just... So I think it kind of varies. As far as the statute, I just... I think the legislature has led itself down a slippery slope of, of course we don't want people to beat their spouses or their family members. We don't want children to be touched sexually. We certainly don't want people to drive drunk. So we'll use those cases, too. Maybe we'll make it a lot... We don't want anybody to be murdered. And people who speed have a propensity to commit speeding, so maybe their past crimes of speeding should be used. I mean, I think we're giving up all of our historical recognition that propensity evidence can mislead a jury. And that's always been the law in our state and in our country, that you can mislead a jury into just because he used to be a bad man when he was a young person, he's now a middle-aged man, that he's still doing the exact same thing. Wasn't the legislative intent made clear when you read the Donahoe case when they cite Senator Rondonio's statement on the floor of the Senate when this bill was being passed? And she said this legislation, which is unique to sex offenders, recognizes the propensity of sex offenders to repeat their crimes, and it allows the court to use the evidence in order to help protect society. So isn't that kind of... I mean, how is it unconstitutional? How do we not know what the end result was for the legislature when they pass this legislation? It's pretty clear, don't you think? I don't think it's... I don't think it's that clear, no. I think that our country, our state, has always required proof that someone committed this specific crime. Many sex offenders are recidivists. There's no question about that. But I don't think that because somebody did something 20 years ago, that means that it happened again. And that's what the jury was left to consider in this case. One was 10 years old and one was 20, so it wasn't just 20. There was a case on trial, one 10 years before that, and then one 10 years before that. That is absolutely correct, Your Honor. And the thing is that Samantha's was only 10 or 11 years previous, she said, and hers was not all that similar. It happened on a single occasion. She was... He was a friend of the family. He wasn't a relative. He wasn't... He, for some reason, was babysitting her and her brother that night when she says this happened. I don't know too much other than that. Whereas I think one of these women could have conceivably testified, but it was really an abuse of discretion to allow both Eucondra and Samantha to testify. Not only was Eucondra 20 years ago, but she had all of that testimony about violence, how he beat her and he made her feel horrible, and then he beat her mother. This is just far too much. It wasn't narrowly tailored to any purpose. And I think it was improperly admitted in this case. You had a jury who didn't know what to do. Are there any further questions? None. Thank you. Thank you, Your Honor. Thank you. Thank you. Good afternoon, Your Honor. Good afternoon, Your Honors. Good afternoon. Can you please record, counsel? Your Honor, I think there's two issues relating to the... or two questions relating to the first issue. The first is whether the evidence was properly admitted. The second was, assuming, or after I demonstrate that it was properly admitted, was there error in the admission? Not the fact that it was admitted, but in how it was applied. Well, you know, you have to somewhat agree with her. A lot of stuff came in in this trial. One of the things that I thought was this beating and who's beating who. I mean, how is that relevant? And how did the probative value out... or how was it prejudicial outweighed by the probative value in that particular testimony? Let me ask you something else. You have a lot of other stuff coming in. I mean, you kind of... they're kind of piling it on. The State's piling it on. You have a couple different victims. I mean... We have... when you say a lot was in, the two victims did testify to a variety of facts. But the fact was, it was very limited. We're not dealing with a cardamom issue where there were hundreds of cases. And I guess Walston was potentially one of the best analysis of the new statute. Because as this Court suggested in Walston, Judge O'Malley basically said, every analysis that pretty much has been done on the concept of both amount and prejudice versus probative value, really analyzes the common law. Really doesn't apply to the statute. And Justice O'Malley, with obviously two other justices, one especially concurring, but all specifically concurring on the 115.7.3, said, wait a second. This isn't the standard old style analysis. When we're dealing specifically with the statute, we are sort of, in essence, getting past the old concern, which was, are we convicting a defendant based on bad acts? If you're talking about propensity? If you're talking about propensity. Okay, but how about in this case? Well, in this case... The state doesn't argue propensity. Well, the state did argue propensity. Inexplicably, and I think counsel probably had it correct, that the instruction probably was an old instruction and was submitted erroneously. I can't say. That's outside the record. But the fact is, the state moved specifically under the statute to admit this under propensity. The judge specifically made the ruling that it would come in under the statute based on propensity. They just never told the jury that? They never told the jury that. Do you believe that letting it in for intent or modus operandi, telling the jury about that but not telling him with respect to propensity is more narrow? It's certainly more narrow. The people would also object, though, with the concept of whether it confused the jury. It didn't confuse the jury. The jury would have been confused if it was told two separate things. The jury was told, wait a second, we're letting this in on propensity or for propensity purposes, and then given a more limited instruction. At that point, the jury might have said, wait a second, what should we consider it for? So the jury wasn't confused. The question is whether the jury wrongly advised. Well, yeah, it was advised incorrectly. It was advised more narrowly. Now, the people don't... Doesn't propensity include intent, motive, absence of mistake? Isn't that really what propensity is? The people basically would argue that that's the case. First of all, we don't concede that it was not a defendant's state of mind wasn't an issue. I will concede that we didn't discuss that in our brief. However, we basically figured that Cardamom was directly on point and didn't need to go into that, and I can argue that briefly today. But yeah, propensity sort of discusses everything. You don't unintentionally have the propensity to commit these kinds of crimes. Your state of mind obviously is somewhat at issue if you have the propensity to commit these types of crimes. And there's no question that the judge made the analysis that this was admitted to demonstrate defendant's propensity. So under the propensity statute, if you look at Walston, the people should arguably err on the side of bringing in too much versus not enough. Because, as Walston suggests, one juror might be convinced after a little bit and one person or one other charged crime. Another juror might need multiple examples. So the question comes down to, is it too much? Well, this court established that Cardamom was certainly too much. You can't come in with 100 or 200 uncharged allegations. Smith, the third district sort of suggested that maybe six was too much, although I would suggest that that wasn't the finding of Smith. Smith basically said, we found that it was too remote and the facts weren't similar enough. Oh, maybe six is an addition. So that's really dicta. Is two too much? Well, this judge very carefully weighed that. The judge kicked the case over for an additional day to say, let me look at Donahoe. I find that there's enough similarities. What are the similarities? Well, again, other than modus, you don't need exact similarities. You need sufficient. The judge found there was sufficient because both of the other victims were the same age at the time the abuse was committed and both of the other victims were in the defendant's care, alone in the defendant's care at the time. He found those were sufficient. The judge was concerned with the time frame, reviewed Donahoe and said, no, this is at least within those parameters, and specifically found that this was appropriate to be admitted. Now, the judge in this case did weigh the prejudicial versus permanent, correct? Definitely. And as I said, carefully, and obviously this court owes the lower court deference based on that finding. If the judge had not done so, totally different matter. But the judge definitely did in this case and made that specific finding. So you're not saying that because we have 115-7-3 that we don't need to do that weighing? No, I think the law is pretty clear. You still need to do the same finding. I think Walston suggests that that finding is a little bit different than under just general other crimes. You look at different factors and you weigh potential undue prejudice, as Walston says. I just want to be sure I didn't misunderstand. No, definitely not. You still conduct the weighing, the balancing act, which the judge did. And again, the only difference is under Walston, you don't get as much, there's not as much concern with the concept of showing that he's a bad actor, because 115-7-3 specifically says we can consider the concept of whether or not he was a bad actor. Talk about the constitutionality of it. You talked a little bit and touched it more. Sure. I think the constitutionality, as counsel sort of initially conceded and then sort of went back to, Dabbs answers the question. Dabbs specifically addressed the exact same concern regarding the historical argument and whether or not we should have a constitutional concern related to the fact that this has been around for a long time. Court specifically said two things. One, we acknowledge that the concern of other crimes evidence has been around for years, but it's not a fundamental concern. It is not of constitutional magnitude. Therefore, we conduct the appropriate test. And in conducting the appropriate test, they found that it was of constitutional magnitude. The appropriate test is rational basis when there's not a fundamental concern. And the court found there certainly was a rational basis, obviously as far back as Donahoe. And in Dabbs, while they analyzed 7-4, they referred to their earlier finding in Donahoe, both that we had already determined that there was a rational basis. Two, while they analyzed 7-4, 7-4 is almost identical on the appropriate concerns to 7-3. And more importantly, or perhaps as importantly, Donahoe was decided on 7-3, and the court referenced their admitted dicta at the time and sort of affirmed it in Dabbs, saying we addressed the question by saying if due process is a question, other courts have already addressed that and they found that there isn't a due process violation. And of course, as I said, well, directly on the point of 7-4, the court said this is not a due process violation based both on 7-4, which is almost the same language as 7-3, and two, based on our earlier finding in Donahoe relating to 7-3. So the court has addressed that. It's addressed the concerns. It's considered those concerns. It's rejected those concerns and found that, indeed, the statute is constitutional. Do you agree that the burden here is the kind of use of discretion? Yes. And again, let me just briefly suggest back to the issue of error. Assuming, as I think we've established and was properly admitted, was there error in what was actually considered? Let's make it clear that the people's open and closing argument made no reference to the two other victims, did not argue or ask the jury find defendant guilty based on those other victims. The people asked that the defendant be found guilty based on the charged victim. It was only after defendant in closing argument attacked the credibility of those two victims did the people then say, wait a second, all three of the victims were credible and why? So the jury properly heard the evidence related to the other two victims. The people didn't emphasize that. Any error in emphasizing that was invited by the defendant's argument. And then finally, the jury could properly hear the evidence for the broader purpose. If there was any error in requesting that particular instruction, and again, people can see that it's sort of inexplicable why, the error would have accrued to defendant's benefit. As counsel admitted, defendant didn't ask for a limiting instruction. It could have come in and should have come in with the broader instruction that you can consider this for any relevant purpose. You can specifically consider it for defendant's propensity. So any error or concern would be, did they consider it too broadly? Did they penalize defendant because of his prior bad acts? The answer is, we don't know, but they could have. And therefore, there was no prejudice to defendant as a result of the introduction of this evidence. We record and ask this court to affirm. Thank you. Just briefly, your honor. The state today seems to have brought up a lot of things it didn't include in its brief, and I do think that that's inappropriate. Like what? Tell us what. Such as the possibility that the jury wasn't properly instructed. The state now says that no big deal. Well, it never said that in its brief, and I think the defendant has the right to a properly instructed jury. And the state waived any argument it had that the jury was properly instructed. The state also waived argument about the excessive nature of the irrelevant and extremely prejudicial other crimes evidence that was presented. The state never, to my recollection in its brief, said that this wasn't too much evidence. Because people are different, we have to provide this much evidence. The state did not carefully tailor its evidence. It was unduly prejudicial. One witness, maybe, but two witnesses that took up most of the trial, and then a third witness to explain their testimony. I don't know how you could expect defense counsel, who only has one chance to talk to the jury, to not talk about those two victims. And if those two women were not talked about in the state's opening, I don't think it's unusual for the prosecutor to wait and make his strongest points when he has his last chance before the jury. So your main objection is more that the prejudicial value outweighed the probative. I think that's one of my points. I don't think that, how can it not be extremely prejudicial to hear that someone already did this? Well, it is. It is extremely prejudicial. But doesn't the statute allow somewhat of an exception for that extremely prejudicial testimony to come in under sex offenses? Absolutely. Wasn't there a rational basis test done to determine that that statute, there's a reason for it, to protect children? Right. So your argument that, gee, this is so highly prejudicial coming in with two, when there have been courts that allowed six prior sex offenses in, nine prior sex offenses in, how are these two so highly prejudicial versus other cases that have allowed a lot more? And how do you get past one side of the statute? I'm sorry. And how do you get past that statute? I think that's your hurdle. How do you get by a statute? If the court was required to have narrowly tailored evidence presented to the jury, this was not narrowly tailored for the purpose, whatever the purpose was. Where is it narrowly tailored? It was under 115.7.3. I'm looking at Nunley, and I know it was in another vote. But under 115.7.3, does it say that the court should allow a narrowly tailored testimony of other sex offenses? No, the statute doesn't say that, but it does say that it should comply with otherwise admissible rules of admissibility of evidence. So it still has to, as you were discussing earlier, consider the balancing test. And the court has to weigh the prejudicial effect of the testimony, and I don't think there's any doubt that that was very prejudicial testimony. And it allows some, I mean, evidence is prejudicial. Isn't the state entitled, you're not complaining so much about the two victims, just the extent of the testimony from the victims, correct? And the third witness, and the state certainly could have put two people on. I mean, like you said, there were six. Isn't the state entitled to introduce evidence and to explain why, for example, child sexual abuse, accommodation syndrome, to introduce that evidence to explain the delay or the lack of a report? I think it should have been limited to explaining. I mean, as I discussed in my brief, there was just pages and pages of evidence about these other two women who acted as they did. And it was just extensive work. That was all the jury heard was all this terrible stuff that he did to these other two people. The Cheyenne, the victim here, allegedly. Isn't that always the case when you have prior crime, sexual type of crime evidence? That it's more extensive than the actual trial evidence? Yeah, that's no different. This case is no different than the typical case where prior criminal evidence of sexual offenses occurred. It's always prejudicial to the defense when somebody gets on the witness stand and points at that person in court and says, that person sexually assaulted me when I was eight years old. And if someone had done that, if the point was to show that he had a propensity to do this, then we didn't need to know about who their neighbors were, what the names of their children were, where they went to school. All of this heartwarming evidence that the state presented, in addition to the violence that you talked about. And I don't know that the jury, the jury didn't know that it took Samantha and you a long time to report their crimes. So why is it important for them to know why children sometimes take a long time to report their crimes? Well, wouldn't one question why it took them so long? One would if one knew that it took them so long. One doesn't know in this case that Samantha knew Condra. So there was no testimony that they never reported this back then? I don't think that there was any testimony that, well, I'm not positive. There could have been that they took their time, but again, what was the point of bringing that in? Well, the defense didn't bring it in to show credibility. Once the witnesses were allowed, but if the witnesses had not been allowed, it's kind of like complaining that the defense counsel argued in his closing argument about their testimony. Well, it's there. You can't just ignore the elephant in the room. The victims testified, and they shouldn't have been allowed to go to the extremes that they were if they had to be admitted at all. I think that that made it unduly prejudicial, even if the victim in this case allegedly didn't say anything to anybody when this alleged offense happened. And it was only when her aunt, great aunt, told her that she saw something. The testimony here is so weak that there couldn't have been proof beyond a reasonable doubt if they hadn't put in these others. So these weren't just... But is that a factor in allowing month 15, 7.3 testimony to come in? Is it a factor that you must have proof beyond a reasonable doubt with the current victim before you bring new victims in? It doesn't say... Or old victims in. It doesn't say that. It doesn't say that, but presumably there has to be probable cause. Correct. Or the state wouldn't have gotten this far with it. The... One other thing. I think there's... But you can't just brush off what the jury was not properly instructed. I think that that's a very important issue that... Even though we're changing the rules on people, which in my view is completely unfair to a defendant when you bring in proof of other crimes, that they should have at least limited it so that he would have a fair trial where his guilt of this offense was considered. And I don't think that the jury was able to do that. We therefore request reversal of his conviction and a new trial. Anything further I can tell you? That's all. Thank you. Thank you. The case is taken under five minutes and the court stands adjourned.